## PARSONS v. SLAUGHTER, City Treasurer.

### (Circuit Court, E. D. Virginia. October 10, 1894.)

1. CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS — TAX-RECEIVABLE COUPONS.

   Coupons from bonds issued under Acts Va. March 30, 1871, and March 28, 1879, bearing on their face the contract of the state that they should be received in payment of taxes, etc., are valid obligations of the state, receivable for taxes and dues to her, and when a taxpayer, in person or by agent, tenders such coupons in payment of taxes due by him, and keeps his tender good, he will be considered to have paid the taxes, and will be protected in person and property from any effort of the state to enforce the tax.

2. SAME—SUIT AGAINST STATE OFFICER.

   It seems that when a state officer commits an overt act, wrongful in its character to the rights and property of a citizen, he takes the responsibility of the act, and cannot justify it by the authority of the state, under color of an unconstitutional statute; but the court will not interpose to compel such officer to do an act for the state which the state could be made to do if she were suable.

3. SAME.

   Complainant alleged that he owned $50,000 of tax-receivable coupons of the state of Virginia; that the state refused to pay such coupons; that all remedies for their collection had been taken away, so that they could only be utilized in payment of taxes; that he had contracted with taxpayers of Virginia to pay their taxes with his coupons, for which they were to pay him on delivery of receipted tax bills; that he had tendered to defendant, the officer appointed to collect such taxes, the amount of the taxes in coupons, and demanded receipt of bills for same; that defendant refused to accept the tender or recognize the validity of the coupons, and threatened to treat the taxpayers as delinquent; that by such refusal complainant would lose the benefit of similar contracts with taxpayers, which they had been accustomed to make and would continue to make but for such refusal, and prayed for an injunction restraining defendant from refusing to accept such coupons. *Held*, that the suit was in fact one to compel the state to perform its contract, and would not lie in favor of a taxpayer who had made a tender of coupons; that complainant, whether regarded as agent of the taxpayers, as having sold the coupons at the time of the tender, or as owning and in control of them until delivery of receipted tax bills, was in no better position, and that the bill should be dismissed.

4. SAME—ACTION FOR DAMAGES.

   It seems, however, that for any injury suffered by complainant by the wrongful refusal of defendant to recognize the tender, he might recover damages in an action at law.

This was a suit by Edwin Parsons against C. A. Slaughter, treasurer of the city of Petersburg, Va., to compel the acceptance of the coupons of certain bonds of the state of Virginia in payment of taxes.

Maury & Maury and D. H. Chamberlain, for complainant.

R. Taylor Scott, Atty. Gen., for defendant.

SIMONTON, Circuit Judge. Edwin Parsons, a citizen of the state of New York, filed his bill of complaint in this court, stating substantially these facts: That he is the owner and holder, to the amount of $50,000, of coupons for interest issued by the state of Virginia by authority of "An act to provide for the funding and

payment of the public debt, approved March 30th, 1871," and of another similar act "to provide a plan of settlement of the public debt, approved March 28th, 1879;" the coupons having been cut from bonds issued under those acts. That these coupons are all genuine, and past maturity, and bear on their face the contract of the state of Virginia that they should be received in payment of all taxes, dues, and demands due said state. That the state of Virginia refuses to pay these coupons as therein provided, and that all remedies heretofore existing whereby the owners were afforded means of collecting them have been taken away by the repeal of the laws granting them; so that now there is no way for collecting or otherwise utilizing these coupons save that afforded by their legal-tender quality for the payment of taxes. That, confiding in his rights afforded by these coupons, he has made a contract with several hundred of the taxpayers of Virginia to pay their taxes assessed for the support of the government with his said coupons to the full amount, and they have agreed to pay him for so doing upon the delivery to them before November 30th next, but not otherwise, of their bills for said taxes duly receipted. These contracts exceed $20,000, which is the value of the tax contracts to him. He accompanies his bill with a list of these taxpayers. That in accordance with said contract, and in performance thereof, on the 16th of August, 1894, he tendered to C. A. Slaughter, treasurer of the city of Petersburg, the officer appointed by law to collect said taxes, for each and every of the taxpayers in said list, the several amounts of their said taxes as in said list appears, in said coupons in payment thereof. That he waived any return when the amount in coupons exceeded the tax, and offered to pay the difference in money when this amount was less than the tax. That he then demanded the receipt of the bills for taxes. That he has always held, and still holds, himself ready to fulfill his tender. That at the same time he notified the treasurer of his duties under the law as settled by the supreme court of the United States, called upon him to obey and perform them, and offered to provide the treasurer, at his own expense, with able counsel to defend his action, if he complied with the tender. But that the said Slaughter, the treasurer, refused to obey and to recognize the validity of the coupons and of the tender, and to give a receipt of the demand, and declared that he would consider and treat said taxpayers delinquent unless the tax was paid in money. That there are other taxpayers for whom he could and would have made similar tenders, but Slaughter having adopted a uniform rule in all such cases, he was deterred, and did not tender the coupons. That for years, according to a method heretofore adopted by the state of Virginia, but now abandoned by her, the taxpayers of Petersburg have been accustomed to contract with him to pay their taxes in his coupons to the extent of nearly $10,000, and that they would continue to do so but for this attitude now assumed by Slaughter, the treasurer. That if Slaughter be not compelled to abandon this attitude, many of the taxpayers who would otherwise contract with him will, for that reason alone, be deterred from so contracting, and the complainant be deprived irre-

trievably of the enjoyment of his rights and profits under the constitution and laws of the United States.    That the only reason for this refusal on the part of Slaughter was that the tender was made in coupons, and to intimidate and induce the taxpayers to withdraw from their contract with him, and to revoke their authority to him; and that he accomplishes this by treating them delinquent if they tendered their coupons, and threatened them with all the consequences resulting therefrom.    Thus a multiplicity of suits may be caused if the taxpayers are not deterred; and, if they are deterred, great injury will be daily and hourly done to the complainant.    The bill prayed an injunction directed to the treasurer, forbidding and restraining him from refusing to accept the coupons as tendered, and from refusing to deliver the tax bills receipted in full on such tender.    When the bill was presented to the court a temporary restraining order was granted, with a rule against the defendant to show cause why it be not made permanent.    The defendant appeared, and has interposed a demurrer on various grounds to the bill.

The litigation over the debt of the state of Virginia created under the acts referred to in the bill has received the attention of the supreme court of the United States for many years.    The result of this litigation is stated by the court itself in McGahey v. Virginia, 135 U. S. 684, 10 Sup. Ct. 972, as follows:

"Without committing ourselves to all that has been said, or even all that may have been adjudged, in the preceding cases that have come before the court on the subject, we think it clear that the following propositions have been established:    First. That the provisions of the act of 1871 constituted a contract between the state of Virginia and the lawful holders of the bonds and coupons issued under and in pursuance of said statute.    Second. That the various acts of the assembly of Virginia passed for the purpose of restraining the use of the said coupons for the payment of taxes and other dues to the state, and imposing impediments and obstructions to that use and to proceedings instituted for establishing their genuineness, do in many respects materially impair the *obligation* of that contract, and cannot be held to be valid or binding in so far as they have that effect.    Third. That no proceedings can be instituted by any holder of said bonds or coupons against the commonwealth of Virginia, either directly by suit against the commonwealth by name, or indirectly against her executive officers, to control them in the exercise of their official functions as agents of the state.    Fourth. That any lawful holder of tax-receivable coupons of the state, issued under the act of 1871 or the the subsequent act of 1879, who tenders such coupons in payment of taxes, debts, dues, and demands due from him to the state, and continues to hold himself ready to tender the same in payment thereof, is entitled to be free from molestation in person or goods on account of such taxes, debts, dues, or demands, and may vindicate such right in all lawful modes of redress by suit to recover his property, by suit against the officer to recover damages for the taking of it, by injunction to prevent such taking where it would be attended with irremediable injury, or by defense to a suit brought against him for his taxes or the other claims standing against him."

It can no longer, therefore, be said that these coupons are not valid obligations of the state of Virginia, receivable for taxes and dues to her; and it is equally clear that when a taxpayer of that state tenders these coupons in payment of taxes due by him, and

preserves this attitude, so as to make good his tender at any and all times, he will thenceforth, in law and in fact, be considered to have paid the taxes, and will be protected in person and property from any effort on the part of any state officer to enforce the tax. That is to say, the tender must either be made in person or by authority of the taxpayer for taxes due by him. The protection given by the court is given to the taxpayer. It will be observed that this protection is of a distinctive character. When the taxpayer has made his tender, producing his coupons, he has fulfilled all that is required of him, and in law the tax is paid. He has nothing more to do except to keep his coupons ready for delivery. If, after this, any step be taken looking to the issue of tax execution or distress warrant, or of beginning of suit against him or his property to collect the tax, upon reporting his case to the court it will restrain such act. Can he go further than this? Will a bill lie to compel the treasurer to receive coupons,—that is to say, specifically to perform the contract set forth in them? It is not the contract of the treasurer; it is the contract of the state of Virginia; and the only reason why it is presented to him for performance is that he is an officer of the state of Virginia. Such a bill would be, in fact, one to compel the state to perform its contract; and such a bill would not lie in this court.

Whether a suit against the officers of a state is or is not a suit against the state itself is a question which has long vexed the supreme court of the United States. The question is ably and elaborately discussed by that court in Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, Mr. Justice Lamar delivering the opinion. His analysis of the decisions, and his conclusion as to the result of them, have been reviewed and confirmed in Reagan v. Trust Co., 154 U. S. 388, 14 Sup. Ct. 1047. This case seems to make this distinction: That when a state officer commits some overt act wrongful in its character to the rights and property of a citizen, he takes upon himself the responsibility of the act, and cannot justify it by the authority of the state under color of an unconstitutional statute. But if it be a suit not to restrain him from acting, but to make him do an act for the state which the state could be made to do were she suable, then the suit is really against the state. So, if this were a suit by a taxpayer who had tendered coupons for his taxes, and now asked this court, in aid of the contract in the coupon, to compel the treasurer to give him a receipt in full therefor, the suit would not be one restraining the treasurer from an act of trespass upon his property, threatened or committed, but would be a proceeding seeking the specific performance by him of a contract made by his principal with the taxpayer, which aid this court could not grant. The language of Mr. Justice Bradley in Virginia Coupon Cases, 114 U. S. 335, 5 Sup. Ct. 965, is not inapplicable:

"But then it will be asked, has the citizen no redress against the unconstitutional acts or laws of a state? Certainly he has. There is no difficulty on the subject. Whenever his life, liberty, or property is threatened, assailed, or invaded by unconstitutional acts, or by any attempt to execute unconstitutional laws, he may defend himself by any proper way by habeas corpus, by

defense to prosecutions, by actions brought on his behalf, by injunction, by mandamus. Any one of these methods of redress suitable to his case is open to him. A citizen cannot in any way be harassed, injured, or destroyed by unconstitutional laws, without having some legal means of resistance or redress. But this is where the state or its officers move against him. The right to all these means of protection and redress against unconstitutional oppression and exaction is a very different thing from the right to coerce a state into a fulfillment of its contracts. The one is an indefeasible right, a right which cannot be taken away. The other is never a right, but may, or may not, be conceded by the state, and, if conceded, may be conceded on such terms as the state chooses to impose."

Is the complainant in a better position than the taxpayer? He is not a taxpayer, and no property of his is liable for taxes, or is exposed to any mode of attack. His case is this: He has made a contract with the taxpayers that he will tender his coupons in payment of their taxes, and that when he presents to each of them a receipt in full of his tax then, and not before, the taxpayer will pay him for the coupons so used. This contract may be either a sale of the coupons to the taxpayer, taking effect at the time of the tender, the price payable upon the delivery of the receipted tax bill, or it may be a sale of the coupons made and terminated at the time of the delivery of the receipted tax bill. If it be the first, and the property in the coupons passed to the taxpayer at the date of the tender, then the complainant, parting with the coupons, lost all of his interest in the contract, and cannot complain that it was not performed. Marye v. Parsons, 114 U. S. 329, 5 Sup. Ct. 932, 962. If, however, under the contract, he was to remain the owner of the coupons, and in control of them, up to and until the delivery of the tax bill receipted, then he has no standing in this court, for "it is only when in the hands of taxpayers or other debtors coupons are receivable for taxes and debts due the state." Virginia Coupon Cases, 114 U. S. 329, 5 Sup. Ct. 934.

It has been earnestly urged that the act of the complainant in making tender for all of these taxpayers was a lawful act. Of this there can be no doubt. Bennett v. Hunter, 9 Wall. 326. Any one can tender or pay the tax of another; and if, either by act or acquiescence, the tender is ratified, or the payment itself is good, the person tendering the payment acts as his agent. Mr. Parsons, in tendering these coupons, may have been the agent of each one of the taxpayers; but the refusal to receive them worked a wrong to his principals, under whose rights he acted. As taxpayers, they were entitled to make a tender, and only because they were taxpayers. The wrong was done to them as taxpayers, but no wrong by this refusal was done to him, their agent. The refusal involved him in no responsibility. It is said, however, that the complainant owns many of these coupons, and that he has made many contracts for disposing of them, and has the opportunity of making many more, and that the refusal of the treasurer to recognize the tender defeats these contracts. If this be so, and if the defendant willfully or wrongfully defeated any right of the complainant, there is no obstacle to his recovery of damages in an action at law for the wrong,— a single action, in which each refusal could be set up as sustaining

the cause of action. He can have no remedy in this court. It is ordered, adjudged, and decreed that the restraining order or injunction heretofore granted be dissolved, and the complaint dismissed.